IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| STC.UNM, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION 6:19-cv-00428-ADA |
| | § | |
| APPLE INC., | § | JURY TRIAL DEMANDED |
| Defendant. | § | |
| | § | |

ORDER DENYING DEFENDANT APPLE'S
MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)

Came on for consideration this date the Motion of Defendant Apple to transfer under 28 U.S.C. § 1404(a), filed on November 1, 2019. ECF No. 22. Plaintiff STC.UNM filed its response on November 14, 2019 (ECF No. 31) and Apple replied on November 26, 2019 (ECF No. 38). The Court held a hearing on this motion on March 31, 2020. ECF No. 58.

After careful consideration of the briefing and arguments made at the hearing, the Court **DENIES** Apple's motion to transfer the case to the Northern District of California ("NDCA"), but **GRANTS** Apple's alternative motion to transfer the case to the Austin Division of the Western District of Texas ("WDTX"), for the reasons described below.

## I.      Factual Background and Procedural History

STC.UNM filed this lawsuit on July 19, 2019 alleging infringement of U.S. Patent Nos. 8,249,204 ("'204 Patent"), 8,565,326 ("'326 Patent"), and 8,265,096 ("'096 Patent"). ECF No. 1. The '204 Patent, the '326 Patent, and the '096 Patent are titled "Apparatus and Method for Channel State Information Feedback," "Method for Constructing Frame Structures," and "System and Method for Bit Allocation and Interleaving," respectively. *Id.* at ¶¶ 23, 30, 37.

1

STC.UNM alleges that Apple products that comply with the IEEE 802.11ac wireless networking standard infringe the '204, '326, and '096 Patents. *See Id.* at ¶¶45, 46, 54, and 62.

## II.     Standard of Review

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties and witnesses, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The party moving for transfer carries the burden of showing good cause.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) (hereinafter "*Volkswagen II*") ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must . . . clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'") (quoting 28 U.S.C. § 1404(a)).

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *Volkswagen II*, 545 F.3d at 312.  If so, in the Fifth Circuit, the "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004).  The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1982)).   The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.* Courts evaluate these factors based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

A court may "consider undisputed facts outside the pleadings, but it must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party." *Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 16, 2019).

A plaintiff's choice of venue is not an independent factor in the venue transfer analysis, and courts must not give inordinate weight to a plaintiff's choice of venue. *Volkswagen II*, 545 F.3d at 314 n.10, 315 ("[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege.").  However, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."  *Id.* at 315; *see also QR Spex, Inc. v. Motorola, Inc.*, 507 F.Supp.2d 650, 664 (E.D. Tex. 2007) (characterizing movant's burden under § 1404(a) as "heavy").

### III.    Discussion Regarding Plaintiff STC.UNM's Sovereignty Objections

STC.UNM claims that the University of New Mexico ("UNM"), the Board of Regents of UNM, and STC.UNM are arms of the State of New Mexico and thus enjoy the rights afforded to a sovereign. ECF No. 1 at ¶7. STC.UNM raises the objection on the grounds of its claimed sovereign status that "it is entitled to litigate within any forum having requisite jurisdiction, and

it cannot be forced to proceed in a forum of the defendant's choice based on a venue statute." ECF No. 32 at 1. Apple argues that STC.UNM's identity as a nonprofit research park corporation does not equate to a sovereign; additionally, Apple cites the Federal Circuit's recent holding that filing a patent infringement suit operates as a nationwide waiver of jurisdiction such that a sovereign can be transferred to a different district. ECF No. 38 at 6. In response, STC.UNM argues that this Court should at least afford a sovereign plaintiff "heightened deference" when analyzing the factors for transfer. ECF No. 31 at 1 n.1.

Even if STC.UNM enjoys sovereign immunity, this Court finds that this case may still be transferred pursuant to Apple's motion to transfer under 28 U.S.C. § 1404(a). *Bd. of Regents of the Univ. of Tex. Sys. v. Bos. Sci. Corp.*, 936 F.3d 1365, 1377 (Fed. Cir. 2019) (holding that "sovereign immunity cannot be asserted to challenge a venue transfer in a patent infringement case where a State acts solely as a plaintiff"). Further, this Court finds that STC.UNM must "abide by federal rules and procedures—including venue rules—like any other plaintiff." *Id.* At 1379. This Court will not adjust its method of weighing the venue transfer factors to give heightened deference to a sovereign plaintiff. The inherent powers of a sovereign do not nullify the venue rules in a patent infringement suit once the sovereign choses to file such a suit in federal court. *Id.*

## IV.    Discussion Regarding Transfer to the Northern District of California

Aside from STC.UNM's objection on sovereignty grounds, neither party contests the fact that venue is proper in NDCA and the suit could have been filed there. Because STC.UNM could have originally filed suit in the NDCA, the Court moves past the preliminary question and weighs the private and public interest factors to determine whether transfer is warranted.

### a.   Relative ease of access to sources of proof

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316.

In its initial motion to transfer, Apple argues that this factor weighs in favor of transfer because "the overwhelming majority of the sources of proof regarding the Accused Technology and the Accused Products" are in the NDCA. ECF No. 22 at 9. Apple claims that the "Accused Technology in the Accused Products was designed and developed by Broadcom employees in California," and that "documents relating to the design and development of the Accused Technology were generated in California." *Id.* Additionally, Apple claims that its own documents and personnel related to the marketing, sales, and financial information for the Accused Products are located in and around Cupertino, California. *Id.* Apple lists three specific individuals and notes their location in the NDCA, and further argues that STC.UNM has neither physical presence nor sources of proof located in the WDTX. *Id.* at 4, 9.

In its response, STC.UNM argues that Apple's sources of proof are as easy to access in the WDTX as in the NDCA and that the location of third-party sources weighs against transfer. First, STC.UNM argues that this factor rests on the "*relative* ease of access, not *absolute* ease of access" of the documents in each location. ECF No. 31 at 6 (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013)). According to STC.UNM, Apple's declaration of unspecified yet relevant documents located in or around Cupertino does not demonstrate how "it is 'relatively' easier to access these documents at [Apple's] Northern California headquarters than at [Apple's] vast Austin campus." *Id.* at 5–6. STC.UNM notes that these documents are likely not sitting as hard copies in a warehouse, but rather are electronically stored on a server and are therefore just as accessible in Apple's location in Austin as in Cupertino. *Id.* at 7 n.6. Also, STC.UNM points

to Apple's Austin campus which employs at least 500 engineers who work on chips for Apple products. *Id.* at 8, Ex. 12. Further, STC.UNM points to recent job openings for a "Senior Wifi Network Engineer for its Austin Campus who must have a strong knowledge of the 802.11ac standard" to indicate that sources of proof are located within the WDTX. *Id.*

STC.UNM does not refute that it has neither a physical presence nor party witnesses located in the WDTX. Instead, STC.UNM claims that third-party sources actually favor WDTX over NDCA, despite Apple's reliance on Broadcom's activities in California. First, STC.UNM claims that its current infringement theories do not depend upon Broadcom's chip design, and that Broadcom's activities in any event are not centered in NDCA. *Id.* at 9–10. STC.UNM argues that its patents are infringed by any device that practices the 802.11ac standard, and thus "the design of the [Broadcom] chips is irrelevant." *Id.* at 9. Additionally, STC.UNM notes that the Broadcom documents were "generated somewhere in the State of California," but are not necessarily stored there; according to STC.UNM, Broadcom has an Austin office through which it could produce any relevant documents and none of the addresses from which Broadcom delivers components to Apple are located in the NDCA. *Id.* Finally, STC.UNM claims that the Wi-Fi Alliance, located in Austin within the WDTX, will be a far more critical third-party witness because it certifies which products comply with the 802.11ac standard. *Id.* at 10.

In its reply, Apple raises several counterarguments. First, Apple argues that STC.UNM is plainly wrong to base infringement allegations entirely on the accused products supporting the 802.11ac Wi-Fi standard and not on the design of the Broadcom chips. ECF No. 38 at 1. From this point, Apple additionally argues that any individuals related to the Wi-Fi Alliance will not be relevant third-party witnesses for this case. *Id.* at 4. Additionally, Apple reemphasizes both its identified personnel and the identified personnel of Broadcom which are both located in the

NDCA. *Id.* at 2–3. Finally, Apple argues that STC.UNM's broad references to industry groups, manufacturing of alleged infringing products within the WDTX, and Apple job-postings in the WDTX that specifically reference the 802.11ac standard are irrelevant to the transfer analysis. *Id.* at 4–5.

The Court finds that the "relative ease of access to sources of proof" weighs in favor of transfer for the reasons that follow.  First, because Apple is the accused infringer, it will likely have most of the documents relevant in this case. *See, e.g.*, *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). These documents, if physical copies are present at all, will likely be in the NDCA where Apple has its largest number of employees. ECF No. 22 Ex. 1 at ¶¶8–9. Additionally, to the extent that any Broadcom documentation of the chip design is necessary, Broadcom documentation is also likely located in California where the chips were originally developed. *Id.*

Turning to the plaintiff's arguments regarding documentation, STC.UNM lacks a physical presence in this district, and none of its documentation will likely be physically present in the WDTX or the NDCA. However, STC.UNM has argued that it will heavily rely on the Wi-Fi Alliance located in Austin as a source of proof to such an extent that any Broadcom documentation is irrelevant. ECF No. 31 at 9–10. The Court finds it possible—if not likely—that STC.UNM could require the Wi-Fi Alliance as a significant source of proof. While this does not necessarily indicate that the Broadcom source is irrelevant, the presence of the Wi-Fi Alliance and its documentation in the WDTX still push back against transfer. Regardless, the two-sources of documentation in the NDCA, with one being the alleged infringer, tip this factor slightly in favor of transfer.

Second, the Court finds that the sources of proof relating to witnesses and personnel also slightly favor transfer. STC.UNM has identified no employees or party witnesses in the WDTX. Apple has identified three employees and their teams located in the NDCA with information related to the marketing, licensing, and finances of the Accused Products. ECF No. 22 at 4. According to STC.UNM, Apple employees at the Austin campus likely have "vastly more relevant knowledge" related to research, development, and design of the technology involved than the employees Apple offers in the NDCA. *Id.* Additionally, Apple's declarations in support of transfer are silent regarding its Texas non-retail employees' knowledge of the research, development, and design of the Accused Technology. *See* ECF No. 22 Ex. 2 at ¶¶14–15. However, while there could potentially be Apple employees in the WDTX with an understanding of the Accused Technology, the Court finds that there are employees with knowledge of the research, development, and design of the Accused Technology in the NDCA. ECF No. 38 at 10 n.5; *See also* ECF No. 22 Ex. 1 ¶¶8–9. Considering the totality of the circumstances, the Court finds that the weight of Apple's witnesses slightly favors the NDCA.

Concerning third party employees and witness, the Court finds that the Broadcom engineers located in California and the Wi-Fi Alliance personnel located in the WDTX counteract each other in terms of convenience. Thus, overall, the location of witnesses and personnel slightly favors transfer. Because the relative sources of proof of documentation and personnel both slightly favor transfer, the Court finds that the first factor favors transfer to the NDCA.

**b.   Availability of compulsory process to secure the attendance of witnesses**

In this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316.

In its motion to transfer, Apple argues that this factor weighs in favor of transfer because "the key witnesses … regarding the design, development, and operation" of the Accused Technology will be Broadcom witnesses in the NDCA. ECF No. 22 at 10. In Apple's view, Apple cannot control the Broadcom witnesses and cannot force them to attend trial absent the ability to subpoena them. *Id.*

In its reply, STC.UNM claims that the subpoena power of the NDCA will be unnecessary because Broadcom is not an unwilling third-party witness. ECF No. 31 at 11. According to STC.UNM, the close and ongoing business relationship between Apple and Broadcom indicates that Apple will not have to resort to subpoena to force Broadcom to testify in its favor. Additionally, STC.UNM claims that this Court's subpoena power will be necessary to obtain documents and testimony from third-parties within the WDTX. *Id.* at 12. STC.UNM claims that the Wi-Fi Alliance will be unlikely to voluntarily cooperate with STC.UNM because Apple and Broadcom are two of the organization's largest sponsors. *Id.* Further, STC.UNM claims that subpoena power over Apple's manufacturer for the Mac Pro in Austin, Flex Ltd., will be necessary to demonstrate that Accused Products are being manufactured and direct infringement is occurring in this District. *Id.*

Apple argues in its response that any information from the Wi-Fi Alliance will be irrelevant and that the organization is comprised of multiple member companies, many of which compete with Apple. ECF No. 38 at 4. Further, Apple argues that any information from the Wi-

Fi Alliance would be irrelevant.[1] *Id.* Additionally, Apple argues that evidence regarding the manufacturing of the Accused Products would be irrelevant because STC.UNM's arguments focus solely on determining whether there is compliance with the 802.11ac standard. *Id.*

This Court finds that this favor is neutral towards transfer. To the extent that STC.UNM wishes Broadcom to testify or provide evidence, STC.UNM will likely require compulsory process to ensure Broadcom's compliance.[2] However, STC.UNM similarly relies on a substantial third-party witnesses within this District, the Wi-Fi Alliance, which may also require subpoenas to secure testimony. Further, the Court finds it unlikely that the manufacturer of the end products, Flex Ltd., will possess any knowledge of patent design and technology at question. Therefore, this factor weighs neutrally with respect to transfer.

### c.   Cost of attendance for willing witnesses

The convenience of witnesses is the single most important factor in the transfer analysis. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).   The Court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).   "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Id.* at 1343.   The convenience of party witnesses is given little weight.  *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at

---

[1] Apple's concerns regarding the relevance of the Wi-Fi Alliance testimony were also raised during the telephonic hearing. Particularly, Apple argued that the technology at issue includes optional features that demonstrate that the 802.11ac standard will not be sufficient to establish infringement. However, the Court notes that even though these features are denoted as "optional," the Wi-Fi Alliance still conducts tests on these features to ensure that they comply with the 802.11ac standard and are interoperable with other Wi-Fi devices. Thus, the certificates and evidence that STC.UNM may seek from the Wi-Fi alliance will still be relevant as to these features.

[2] Apple may also need compulsory process to ensure Broadcom's compliance, but given the size of the business relationship between the two companies, the Court finds that Apple is less likely to need compulsory process than STC.UNM is.

*4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (ECF No. 20) (Apr. 14, 2010).

As a preliminary matter, given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial. Rather, in addition to the party's experts, the Court assumes that no more than a few party witnesses—and even fewer third-party witnesses, if any—will testify live at trial. Therefore, long lists of potential party and third-party witnesses do not affect the Court's analysis for this factor.

After considering the convenience of both willing party and non-party witnesses, the Court finds that this factor weighs in favor of transfer. First, the cost of attendance of party witnesses weighs generally in favor of transfer. Apple claims that its witnesses are all located entirely in the NDCA; however, Apple's substantial presence in Austin, including job-postings for personnel with "strong knowledge" of the 802.11ac standard, weaken the strength of this assertion. Regardless, the Court finds that the NDCA would be more convenient for Apple because it is the location of employees with knowledge of the finances, marketing, and licensing of the Accused Products as well as the possible location of employees with knowledge of the operation and design of the Accused Technology. While travel time for STC.UNM is an additional hour to the NDCA than to the WDTX, STC.UNM's witnesses must travel regardless of which forum is ultimately chosen and a one-hour increase in the duration of a single flight does not sufficiently shift the balance of the transfer analysis.

Turning to non-party witnesses, Apple claims that Broadcom in the NDCA will provide essential third-party witnesses and knowledge relevant to the case at hand. Conversely, STC.UNM claims that the Wi-Fi Alliance in the WDTX will be a crucial source of witnesses relevant to its infringement theories and determining whether the Accused Products comply with

the 802.11ac standard. Because the parties have identified—with relative degrees of specificity—relevant witnesses in both districts, the Court finds that the non-party witnesses neither weigh for nor against transfer.

Because party witnesses weigh in favor of transfer and the Broadband and Wi-Fi Alliance witnesses taken together are neutral towards transfer, this factor weighs in favor of transfer.

### d.  All other practical problems that make trial of a case easy, expeditious and inexpensive

In its motion, Apple claims that this factor is neutral and states that it is unaware of any related cases pending in either District. ECF No. 22 at 13.

In its response, STC.UNM argues that it has filed an additional lawsuit in this Court asserting the same claims of the patents at issue. *See STC.UNM v. TP-Link Techs. Co.,* No. 6:19-cv-262 (W.D. Tex. 2019) (the "TP-Link case"). STC.UNM argues that transferring this case would disrupt judicial economy because the patents and claims at issue in this case and the TP-Link case are the same. ECF No. 31 at 14.

In its reply, Apple notes that there has been "no substantive activity" in the TP-Link case and therefore the factor as a whole should be neutral towards transfer.

The Court finds that this factor weighs slightly against transfer for the reasons that follow. First, the TP-Link case was filed before this suit and would still be required to be adjudicated if this case were transferred. Despite not being as developed as the current case, the TP-Link case involves the same patents and claims at issue, and transfer of this case "would lead to two separate cases in two separate Courts about the same claims in the same patents, which would create a disruption in judicial economy, not to mention a possibility of obtaining inconsistent rulings." *East Texas Boot Co., LLC v. Nike, Inc.*, No. 2:16-cv-0290-JRG-RSP, 2017

WL 2859065, at *6 (E.D. Tex. Feb. 15, 2017). On the other hand, keeping these cases together would promote consistency as the same Court would hold *Markman* hearings and provide claim constructions for the same patent—avoiding the potential of having the same patent claims interpreted to have different meanings by various Courts.

### e.   Administrative difficulties flowing from court congestion

The relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

In its motion, Apple argues that the NDCA has a shorter time to trial for patent cases than this District, but Apple notes that this Court is now scheduling patent cases for trial faster than it did in the past. ECF No. 22 at 14.

In its response, STC.UNM notes that the current Scheduling Order in this case anticipates that trial will commence in March of 2021, only 20 months after the case was filed compared to median time of 28 months in the NDCA.  ECF No. 31 at 14.

Currently, the Markman hearing for this case is scheduled for April 3, 2020, with trial scheduled March 19, 2021, 50 weeks following the Markman hearing. Following this schedule, trial will commence 20 months from the date of filing, July 19, 2019. The Court finds that this factor weighs in favor of transfer because the 20-month time to trial of this case is significantly shorter (and approximately 30% faster) than the median of 28.4 months to trial in the NDCA.[3] *See Fintiv, Inc. v. Apple Inc.,* 6:18-CV-00372-ADA, 2019 WL 4743678, at *7 (W.D. Tex. Sept. 13, 2019).

---

[3]As noted in the hearing, the Court finds any arguments relying on the impact of the COVID-19 virus too speculative at this time to weigh either for or against transfer. It was noted that the virus has had a substantially greater impact and has significantly slowed down the dockets in the NDCA, while conversely it was noted that the virus could also discourage air-travel from California to the WDTX. Because these factors look too far forward and speculate as to the uncertain impact of the virus, the Court declines to find that they weigh either for or against transfer when analyzing this factor.

### f.   Local interest in having localized interests decided at home

In its motion, Apple argues that the NDCA has a stronger local interest in this litigation than the WDTX because (1) the Accused Technology from Broadcom was designed and developed in the NDCA, (2) Apple's headquarters are located in the NDCA, and (3) all of Apple's relevant employees are based in the NDCA. ECF No. 22 at 14–15. Apple also argues that STC.UNM has no connection to the WDTX. *Id.* at 14.

In its response, STC.UNM argues that this factor weighs against transfer because (1) the entity responsible for certifying and promoting the 802.11ac standard central to this suit is headquartered in Austin, Texas, (2) Apple is soon to be—if not already—the largest employer in the WDTX, and (3) Accused Products are being manufactured—and therefore direct infringement is allegedly occurring—within the WDTX. ECF No. 31 at 14–15.

The Court finds that this factor weighs against transfer for the following reasons.  First, STC.UNM lacks substantial local connections to either the NDCA or the WDTX and is neutral with respect to this factor. Turning to Apple, both the NDCA and the WDTX have a significant interest in this case because Apple is likely one of the largest employers in each District. Additionally, while Apple claims that all its employees with relevant knowledge are in the NDCA, the Austin job-posting requiring that Apple engineers have "strong knowledge" of the 802.11ac standard demonstrates that the employees and business Apple conducts within this District will be affected by the determinations regarding the standard and infringement made in this case.

Further, one of the Accused Products is being manufactured within this District. Apple's flagship desktop computer, the Mac Pro, is an Accused Product in this case and is made in Austin, Texas. Although courts must disregard "interests that 'could apply virtually to any

judicial district or division in the United States,' such as the nationwide sale of infringing products." here, however, the manufacturing of an infringing product occurs solely within this District, giving those involved with its manufacture a localized interest in determinations made regarding the infringement—or lack thereof—found in this case. *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 647 (E.D. Tex. 2017) (quoting *Volkswagen II*, 545 F.3d at 318)) (finding that a manufacturing facility of an infringing product within a District "creates a local interest" in that District).

Second, the localized interests of the third-parties also weighs in favor of the WDTX. The Wi-Fi Alliance in headquartered in Austin, Texas and currently STC.UNM contends that evidence obtained from the Wi-Fi Alliance will be essential to establishing infringement. ECF No. 31 at 10, 12. The Wi-Fi Alliance works to promote, certify, and ensure uniform adoption of Wi-Fi standards that include the 802.11ac standard which STC.UNM alleges is central to this case; thus, the Wi-Fi Alliance has a heavy localized interest in this case because infringement based on compliance with the 802.11ac standard would affect the Wi-Fi alliances promotions and certifications. If it is found that compliance with the 802.11ac is enough to establish infringement as STC.UNM contends, then the Wi-Fi Alliance's goal of spreading use and adoption of the standard may be hindered. Additionally, while Broadcom is headquartered in the NDCA and the Broadcom chips may be designed in the NDCA (although the Court finds it more reasonable to assume that the chips were designed in the Central or Southern Districts of California), STC.UNM contends that the chip design "is not relevant" and notes that none of the locations from which Broadcom delivers the components to Apple originate within the NDCA. *Id.* at 9. Further, Broadcom has a significant presence in the WDTX and office in Austin.

Considering the local interests of the Wi-Fi Alliance and Broadcom, the Court finds that the local interests of the third-parties weighs more towards the WDTX.

Accordingly, the Court finds that the local interest in having localized interests decided at home weighs against transfer.

### g.  Familiarity of the forum with the law that will govern the case

Both parties agree that this factor is neutral.  ECF No. 22 at 15 (Apple); ECF No. 31 at 15 n.20 (STC.UNM).  The Court also agrees.

### h.  Avoidance of unnecessary problems of conflict of laws or in the application of foreign law

Both parties agree that this factor is neutral.  ECF No. 22 at 15 (Apple); ECF No. 31 at 15 n.20 (STC.UNM).  The Court also agrees.

### i.  Conclusion

The Court finds that, while the relative access to the sources of proof and the cost of attendance for willing witnesses factors favor transfer, the administrative difficulties flowing from court congestion and the local interests in having localized issues at home factors weigh against transfer. Additionally, the Court finds that the other practical problems factor slightly weighs against transfer. Thus, because two factors weigh against transfer, one factor slightly weighs against transfer, and two factors weigh in favor of transfer with the other factors neutral, the Court concludes that Apple has not demonstrated that the NDCA is more convenient let alone meet its "heavy burden" of showing that the NDCA is "clearly more convenient." *Volkswagen II*, 545 F.3d at 314 n.10, 315.

### V.      Discussion regarding alternative motion to transfer to Austin

The Court agrees that the Austin Division is more convenient than the Waco Division for the reasons Apple has described and because the Wi-Fi Alliance has as significant presence in Austin but not in Waco. In short, whatever facts weigh against transfer to NDCA from WDTX also weigh in favor of transferring to Austin from Waco. Therefore, the Court finds that Apple has met its "heavy burden" of demonstrating that Austin is "clearly more convenient."

### VI.     Conclusion

It is therefore **ORDERED** that Apple's motion for transfer venue to the Northern District of California is **DENIED**.    It is further **ORDERED** that Apple's alternative motion is **GRANTED** and that the above-styled case be **TRANSFERRED** to the Austin Division but remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on November 3, 2019.


**SIGNED** this 1st day of April, 2020.


ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE